[Civ. No. 9620. Second Appellate District, Division One.—March 12, 1936.]

JEROME KEEFER, Respondent, v. MARGARET S. PORTERFIELD, Appellant.

John J. Selover and Frank McNulty for Appellant.

Denio, Hart, Taubman & Simpson for Respondent.

WHITE, J., *pro tem.*—Defendant has appealed from a judgment rendered against her for $21,022.96 and costs in an action upon a promissory note executed by defendant Margaret S. Porterfield and her husband W. L. Porterfield, in favor of Harry A. Reidy, dated July 8, 1929, for $16,500, due one year after date, and assigned by Reidy to plaintiff Jerome Keefer. The action was dismissed as to the defendant W. L. Porterfield because he was out of the state and it was impossible to obtain personal service of process upon him.

At the trial it was stipulated that the promissory note which was the subject of this action had been transferred to plaintiff Keefer after maturity, subject to any defenses good against the original payee, Harry Reidy.

On the appeal now before us appellant contends that there has been a total failure of consideration, and that appellant Margaret S. Porterfield received nothing whatever in consideration for the making and execution of the promissory note in question; that the findings and judgment lack support in the evidence, and that the evidence is insufficient to show that plaintiff is the owner of the note.

For a consideration of the grounds upon which the judgment is assailed, a statement of the facts, as disclosed by the evidence, becomes necessary. In 1926, Harry A. Reidy (now deceased) owned a ranch at Hemet. A short time before October 8, 1926, Reidy entered into negotiations with W. L. Porterfield (husband of appellant here) for the sale of the Hemet ranch. However, the negotiations finally terminated in a deal whereby Reidy deeded the Hemet ranch to Porterfield and Porterfield delivered to Reidy a $25,000 promissory note, executed by himself and wife (the appellant herein). Reidy also gave to Porterfield the sum of $12,500, and the latter delivered to Reidy a $12,500 note and mortgage, dated October 8, 1926, also executed by himself and wife, upon the Hemet ranch.

With the ranch in his possession, and Reidy holding the unsecured note for $25,000 and the secured note for $12,500, Porterfield then turned the ranch over to the Prudential Mortgage Company, subject not only to the aforesaid $12,500 note, but also to a second mortgage, the nature and amount of which is not disclosed by the evidence. Then, about June, 1928, Porterfield contacted Reidy, advising the latter that he had tried to foreclose the second mortgage on the ranch as against the mortgage company (to whom he had deeded the ranch), but that the mortgage company was defending against such foreclosure. Porterfield asked Reidy to foreclose the $12,500 first mortgage, so as to eliminate the mortgage company, as well as the second mortgage, thereby putting Porterfield back where he was before he had put on the second mortgage and sold the property. Porterfield offered to pay the costs of these foreclosure proceedings and to give a new note, signed by himself and wife (the appellant herein) for $12,500, in lieu of the original $12,500 note, which of necessity must be delivered into court for cancelation when the first mortgage was foreclosed. About this time Reidy assigned the original $12,500 note and mortgage to one Comfort (his son-in-law), and the latter, in September, 1928, started an action to foreclose the original $12,500 mortgage. A judgment was rendered foreclosing the mortgage, and pursuant thereto the foreclosure sale was held June 15, 1929. On July 17, 1929, Porterfield wrote to Comfort, agreeing to pay in full the $25,000 note originally executed in favor of

Reidy, and also to pay in full the $12,500 mortgage against the ranch, plus expenses incurred in the foreclosure proceedings, upon the understanding that when such payments were made the ranch would be deeded to Porterfield free and clear of incumbrances, except taxes and current bills; and further promised in his letter to "expedite the payments as far as possible". It further appears that payments were made on the principal of the $25,000 note which reduced it to $16,500. On July 8, 1929, a new note for the remaining unpaid balance of $16,500 was executed by Porterfield and appellant herein. The Porterfields made two payments of interest on the $16,500 renewal note, doing this as late as October, 1929. Reidy obtained the final commissioner's deed on foreclosure June 17, 1930, there having been no redemption. The evidence indicates that the agreement between the parties was that if the Porterfields paid both the renewal note for $16,500 and the new note for $12,500 at the end of the period of redemption, Reidy was to deed the property back to the Porterfields. However, the Porterfields did not make such payments, and finally Reidy deeded the ranch to his wife. Later, Mrs. Reidy quieted the title to the ranch as against the Porterfields through a stipulated judgment in the superior court. The present suit is to recover on the renewal note of $16,500, and does not involve the $12,500 note. From the evidence, therefore, we find that the Porterfields in 1926 obtained clear title to the ranch from Reidy. They then borrowed $12,500 in cash and gave a mortgage on the ranch to secure it. Porterfield then sold the ranch. He then asked Reidy to foreclose the $12,500 mortgage and buy the ranch in, thus wiping out the one to whom Porterfield had sold the ranch. The Porterfields then gave a renewal note for the balance of $16,500 on the original purchase price note of $25,000, and also executed a $12,500 note to hold in lieu of the one being foreclosed, agreeing that he, Porterfield, would pay them both when the time for redemption was up. However, he paid nothing whatever, and we find Reidy has the ranch back, with no part of his $12,500 mortgage paid, and only a comparatively small part of the original $25,000 mortgage paid.

In the face of these facts it seems to us that it would tax one's credulity and do violence to reason to declare that

there was either a failure or a want of consideration, in so far as this appellant is concerned.

A mere recital of the aforementioned evidence is a complete answer to appellant's contention that the findings are not supported by the evidence, for the findings are predicated upon the evidence herein set forth, and a comparison of the evidence with the findings made conclusively shows that the latter finds abundant support in the former.

█ Appellant's final claim, that there is no evidence to show that plaintiff is the owner of the note, falls before a recital of the stipulation entered into between the parties at the trial: that the promissory note in question had been transferred to plaintiff, Jerome Keefer, after the maturity thereof, subject to any defenses good against Harry Reidy. This stipulation, made without reservation, relieved the plaintiff from the necessity of introducing further evidence as to plaintiff's ownership of the note.

For the foregoing reasons, the judgment is affirmed.

York, Acting P. J., and Doran, J., concurred.